## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

LONG VANG,

      Plaintiff

v.

WHITBY TOOL & ENGINEERING CO. LTD., a
foreign corporation,

      Defendant

**MEMORANDUM OF LAW & ORDER**
Civil File No. 06-3675 (MJD/AJB)

John T. Buchman, Barna Guzy & Steffen, Ltd., Counsel for Plaintiff.

Jennifer F. Rosemark and Wendy Canaday, Flynn Gaskins & Bennett, L.L.P,
Counsel for Defendant.

## I.     INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss.  [Doc.

No. 2]  The Court heard oral argument on January 5, 2007.

## II.    FACTUAL BACKGROUND

### A.     The Parties

On August 19, 2002, Plaintiff Long Vang, a Minnesota resident, was an

employee of Onan Corporation ("Onan"), located in Minneapolis, Minnesota.

Onan is now known as Cummins, Inc.  On that date, Vang injured the fifth finger

1

on his left hand while working at Onan trying to unjam a slot insulator manufactured by Defendant Whitby Tool & Engineering Co. Ltd. ("Whitby Tool"). That injury ultimately required amputation of his finger.  Vang claims that the machine had no safety mechanisms and that the machine started operating while he was fixing it.

Onan used the slot insulator in the production of power generators and electric engines.  Whitby Tool had manufactured that particular slot insulator in 1984.

Whitby Tool has always had its principal and only place of business in England.  It was founded in 1955 and began designing and manufacturing automatic slot insulating machines in the late 1960s or early 1970s.  Since that time, Whitby Tool has manufactured and sold a total of 430 slot insulators, 31 of which were models like the one involved in this case.

In the 1980s and 1990s, Whitby Tool employed twenty people and had a sales department and production factory in England.  In 2003, Whitby Tool closed its factory, ceased production, and laid off its staff.  Since that time, the only employee of Whitby Tool is Jonathan Whitby, Managing Director, who runs the business from his home in England.

**B.     Third-Party Agreements**

Onan bought the slot insulator machine at issue from Industra Products (UK) Limited, a former distributor of Whitby Tool.  Industra Products (UK) Limited was a corporation organized under the laws of Great Britain, United Kingdom, with its principal place of business in England.  The invoice for the machine at issue in this lawsuit is between Onan and Industra Products (UK) Limited.  Another document mentioning the Onan equipment bears a letterhead for Industra Products, Inc., with an address in Fort Wayne, Indiana.  Industra Products, Inc., was the United States division of Industra Products (UK) Limited.

Between 1970 and 1985 or 1986, Whitby Tool assigned its designs and the rights to its slot insulator equipment to Industra Products (UK) Limited.  Whitby avers that, under the Whitby Tool and Industra Products (UK) Limited agreement, Whitby gave up the right to sell, market, or label slot insulator machines and that Industra Products (UK) Limited was responsible for testing, labeling, and distributing the slot machines.  Whitby also avers that Industra Products (UK) Limited provided training for the machines, put its own labels on the machines, and incorporated them into its own line of machines for sale.  In 1985 or 1986, Industra Products (UK) Limited disbanded.

From 1985 or 1986 until 1991 or 1992, Whitby Tool sold its machines and parts in the United States through Link Engineering, a company located in Michigan.  During that time, Whitby Tool also started its own sales force in the

United Kingdom to reach European markets.  Then, from 1991 or 1992 through 2003, when it ceased manufacturing, Whitby Tool sold its machines and parts in the United States through Windamatic Systems, a company located in Indiana.

### C.     Whitby Tool's Contacts with Minnesota

Whitby Tool has never been licensed to do business in Minnesota.  It has never had agents, offices, employees, or property in Minnesota.  Whitby Tool asserts that it has never solicited or advertised any business in Minnesota.  Additionally, Whitby Tool knows of only one of its slot insulators with an end-user in Minnesota – the machine at issue in this lawsuit.

Whitby Tool has never had any direct contact with Onan.  Onan purchased the slot insulator through Industra; it purchased two spare parts from Link Engineering in 1986; and it purchased one spare part from Windamatic in 1997.  In regard to the spare parts, Onan made the orders and inquiries through Link Engineering or Windamatic, and, then Link or Windamatic ordered the parts from Whitby Tool.  Whitby Tool shipped the parts to Link or Windamatic and, in turn, Link or Windamatic shipped the parts to Onan.

Whitby Tool currently maintains a website for inquiries about spare parts for the United Kingdom market, which are purchased from and manufactured by an English engineering firm.  Any inquiries or orders from the United States are serviced by Windamatic Systems.  Whitby Tool supplies Windamatic with some

purchased parts from the United Kingdom, and Windamatic manufactures or subcontracts manufacture of other parts.  Since 2003, Whitby Tool has only sold three slot insulators, all of which Windamatic manufactured and supplied.

The website mentions Whitby Tool's "long standing partners in the USA" and states that if the internet visitor contacts it by a request form on the website or by email, "we or our local representative will be in contact."  On a linked page entitled, "Whitby Associates," is the contact information for Windamatic.

### D.      Procedural History

In August 2006, Vang filed suit in Hennepin County District Court against Whitby Tool for negligence and strict products liability.  On September 11, 2006, Whitby Tool removed the case to this Court based on diversity jurisdiction. Whitby Tool has now filed this current motion to dismiss based on lack of personal jurisdiction.

## III.    DISCUSSION

### A.      Personal Jurisdiction Standard

Although the plaintiff has the ultimate burden of proof on the issue of personal jurisdiction,

> [t]o defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction.  If the district court does not hold a hearing and instead relies on pleadings and affidavits . . . the court must look at the facts

in the light most favorable to the nonmoving party and resolve all
factual conflicts in favor of that party.

Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir.

1991) (citations omitted).

"A two-step inquiry is employed when determining whether a federal court

has jurisdiction over a non-resident party: (1) whether the facts presented satisfy

the forum state's long-arm statute, and (2) whether the nonresident has

'minimum contacts' with the forum state, so that the court's exercise of

jurisdiction would be fair and in accordance with due process." Soo Line R.R. Co.

v Hawker Siddeley Can., Inc., 950 F.2d 526, 528 (8th Cir. 1991) (citation

omitted).  "The Minnesota long-arm statute extends jurisdiction to the fullest

extent permitted by the due process clause." Id. (citation omitted).  Thus, the

Court need only decide whether personal jurisdiction is consistent with federal

due process.  Id.

The Eighth Circuit has explained:

> The due process clause requires there be minimum contacts
> between the defendant and the forum state before the forum state
> may exercise jurisdiction over the defendant.  Sufficient contacts
> exist when the defendant's conduct and connection with the forum
> State are such that he should reasonably anticipate being haled into
> court there, and when maintenance of the suit does not offend
> traditional notions of fair play and substantial justice.  In assessing
> the defendant's reasonable anticipation, there must be some act by
> which the defendant purposefully avails itself of the privilege of
> conducting activities within the forum State, thus invoking the
> benefits and protections of its laws.

<u>Soo Line R.R. Co.</u>, 950 F.2d at 528-29 (citations omitted).

The Court examines five factors to determine whether the exercise of jurisdiction comports with due process:

> (1) the nature and quality of the contacts with the forum state;
> (2) the quantity of contacts with the forum;
> (3) the relation of the cause of action to these contacts;
> (4) the interest of the forum state in providing a forum for its residents; and
> (5) the convenience of the parties.

<u>Id.</u> at 529 (citation omitted).  The first three considerations are primary factors, whereas the latter two considerations are secondary factors.  <u>Id.</u>

The court may exercise specific or general jurisdiction over a party.  "Where a court premises jurisdiction over a defendant upon the relationship between the plaintiff's claims and the defendant's forum state activities, it has been said that the court is exercising 'specific jurisdiction.'"  <u>Morris v. Barkbuster, Inc.</u>, 923 F.2d 1277, 1280 (8th Cir. 1991) (citation omitted).  When the plaintiff's claim is not related to the defendant's contacts with the forum, a court can exercise general jurisdiction based on the defendant's "continuous and systematic" contacts with the forum.  <u>Id.</u> at 1280-81.  In the present case, only the issue of specific jurisdiction is before the Court.

**B.     Specific Jurisdiction**

**1.     The Nature, Quality, and Quantity of the Contacts**

Whitby Tool argues that it has not purposefully availed itself of the privilege of doing business in Minnesota because it does not have any offices,

employees, or agents in Minnesota.  Whitby Tool asserts that it has not directed

any marketing efforts toward Minnesota, and that its use of distributors that sell

its products in Minnesota does not constitute the creation of a network intended

to blanket the country, or Minnesota, with its products.  At the time the Onan

machine was sold, Whitby claims that it had assigned all rights to distribute,

market, and label the machines to Industra (UK).  Only one of its slot insulators

ended up in Minnesota.  In regards to its website, Whitby Tool states that it is not

directed toward the state of Minnesota.  Whitby Tool characterizes its sales to

Onan as isolated, sporadic and the result of unilateral requests by Onan.

Whitby Tool currently maintains a website that can be viewed in

Minnesota.  Under the sliding scale analysis of the website, the Court concludes

that Whitby Tool's website does not weigh for or against personal jurisdiction.

Lakin v. Prudential Sec., Inc., 348 F.3d 704, 711 (8th Cir. 2003).  On the one

hand, the website does allow interested customers to submit requests for

information and contains contact information for Whitby Tool's U.S. distributor,

indicating an intent to service the U.S. market.  On the other hand, the website

does provide information on Windamatic for interested American customers and

requests from American customers will be answered by Windamatic, not by

Whitby Tool.  The website is fairly passive, advertising information about the

products and giving contact information.  Finally, the website is unrelated to the

sale of the slot insulator at issue in this lawsuit.  The existence of the website does

not influence the Court's analysis of this factor.  The Court now turns to Whitby Tool's contacts with Minnesota through its distributors.

Whitby Tool sold an entire machine to its distributor, knowing the machine would end up in Minnesota.  Documents in the record demonstrate Whitby Tool's knowledge that the machine would be used by Onan in Minnesota.  This is not a case in which the foreign manufacturer merely sold component parts that fortuitously ended up in the forum state and there is no evidence that the manufacturer knew it was manufacturing the product for installation in the forum state, as in <u>Falkirk Mining Co. v. Japan Steelworks, Ltd.</u>, 906 F.2d 369, 375-76 (8th Cir. 1990).  Furthermore, Whitby Tool's logo appeared on the instruction manual prepared for Onan.  <u>Cf.</u> <u>Morris v. Barkbuster, Inc.</u>, 923 F.2d 1277, 1281 (8th Cir. 1991) (holding no jurisdiction when foreign manufacturer sold its entire line of products to a second company, which later manufactured and sold the defective product to a Minnesota entity).

"A foreign manufacturer that successfully employs one or two distributors to cover the United States intends to reap the benefit of sales in every state where those distributors market." <u>Clune v. Alimak AB</u>, 233 F.3d 538, 544 (8th Cir. 2000).  Whitby Tool created a long-lasting distribution network to service the entire United States with its products, knew the slot insulator in this case was being manufactured for use in Minnesota, and associated its logo with the machine sold into Minnesota.  <u>See</u> <u>Barone v. Rich Bros. Interstate Display</u>

Fireworks Co., 25 F.3d 610, 615 (8th Cir. 1994) (finding personal jurisdiction over foreign manufacturer, who had no office, agent, distributor or advertising in forum state and never directly shipped to forum state, because manufacturer knew products were entering forum state through its distribution network and "reaped the benefits of its network of distributors, [so] it is only reasonable and just that it should now be held accountable in the forum of the plaintiff's choice"). Although only one Whitby Tool slot insulator was sold to an entity in Minnesota, Whitby Tool was aware of the destination of the machine and sold multiple replacement parts to Onan to maintain the machine in Minnesota.

The Court concludes that, although it is a close question, the nature and quality of the contacts factor weighs in favor of personal jurisdiction. On the one hand, Whitby Tool only sold one machine to Minnesota, and it did so indirectly, through Industra Products (UK) Limited. On the other hand, Whitby Tool has purposefully partnered with distributors for over thirty years in order to service the U.S. market. The evidence submitted indicates that Whitby was aware that it was manufacturing this particular machine for use by Onan in Minnesota, placed its logo on the manufacturer's guide, and created the distribution system that both brought the machine to Minnesota and provided spare parts to Onan on an ongoing basis.

On the other hand, the quantity of the contacts weighs against personal jurisdiction because Whitby Tool only sold one machine that ended up in Minnesota and provided replacement parts for that machine on two occasions.

### 2.    The Relation of the Cause of Action to These Contacts

To satisfy specific personal jurisdiction, the Court requires a connection between the cause of action and defendant's contacts with the forum state.  When a plaintiff's claim arises out of, or is connected with, the defendant's activities in the forum state, "maintenance of the action . . . generally does not offend traditional notions of fair play and substantial justice."  Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir. 1991) (citation omitted).

This cause of action arose out of Vang's injury received while repairing one of Whitby Tool's allegedly defective slot insulator machines.  This injury occurred because Whitby Tool entered into a distribution relationship with a distributor that sold products designed and manufactured by Whitby Tool in the United States.  In fact, Whitby tool knew that this machine was to be used in Minnesota and provided replacement parts to maintain this machine.  Whitby Tool cannot "hide behind the structuring of its distribution system when [its] intent was to enter the market here and profit thereby."  Rostad v. On-Deck, Inc., 372 N.W.2d 717, 722 (Minn. 1985).  By using U.S. distributors, Whitby Tool sought an American market for its products.  The Court concludes that the connection

between the cause of action and the contacts supports conferring personal

jurisdiction.

### 3.     The Interest of the Forum State in Providing a Forum for Its Residents

Both parties recognize Minnesota's interest in providing a forum for an

injured Minnesota resident when the Minnesotan was injured by the defendant's

product and the accident occurred in Minnesota.  <u>Rostad</u>, 372 N.W.2d at 722.

This interest is furthered by the fact that Vang may not have any other venues

available in the United States where he could file suit.  This factor weighs in favor

of personal jurisdiction.

### 4.     The Convenience of the Parties

Whitby Tool argues that Whitby and his small business would suffer

hardship if Whitby had to travel to the United States to defend this lawsuit.

Whitby Tool reaped benefits by selling this machine to Industra Products

(UK) Limited for sale in Minnesota and, so, it must accept the corresponding

responsibilities.  Although Whitby Tool would suffer inconvenience by traveling to

Minnesota to defend this lawsuit, Minnesota otherwise provides a convenient

location.  The witnesses to the injury reside in Minnesota . Not only did the injury

occur in Minnesota, but the slot insulator is also located here.  Vang is a blue-

collar worker, who does not possess funds to travel to England to litigate this

case.  Therefore, the parties' convenience weighs in favor of conferring jurisdiction.

### 5.    Conclusion

Overall, the first factor - the nature and quality of the contacts with the forum state, the third factor - relation of the cause of action to the contacts, fourth factor - interest of the forum state, and fifth factor - convenience of the parties, weigh in favor of personal jurisdiction.  The second factor, quantity of the contacts, weighs against jurisdiction as Whitby Tool only sold one machine to Minnesota and spare parts on two occasions.  Weighing all five factors, the Court concludes that personal jurisdiction exists over Whitby Tool.

Accordingly, based upon the records, proceedings, and files herein, **IT IS HEREBY ORDERED** that:

Defendant's Motion to Dismiss [Doc. No. 2] is **DENIED**.

Dated:  February 15, 2007                    s / Michael J. Davis

                                             Judge Michael J. Davis
                                             United States District Court